IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE

TALITHA GAIL WOODY, personally, and
as the personal representative and next of kin
of FLOYD MICHAEL WOODY, deceased,

    PLAINTIFF,

v.

CHRIS ALLEN BUCKNER, in his personal
capacity; JOSHUA RIGSBY, in his personal
capacity; CHAD DUNLAP, in his personal
capacity; JUSTIN CROWDER, in his
personal capacity; MARK SNOWDEN, in
his personal capacity; ALEJANDRO
TORRES, in his personal capacity; JEREMY
LEMONDE, in his personal capacity; JOHN
DAVID, in his personal capacity;
CHRISTOPHER EDMONDS, in his personal
capacity; ERIC RAMSEY, in his personal
capacity; RANDY HUMBARD, in his
personal capacity; JOHN HOLLAND, in his
personal capacity; JEREMY NASH, in his
personal capacity; SHERIFF JEFF COFFEY,
in his official and personal capacities;
WHITE PINES, TENNESSEE; and
JEFFERSON COUNTY, TENNESSEE,

    DEFENDANTS.

No. _____
JURY DEMANDED

## COMPLAINT

COMES NOW, Talitha Gail Woody, personally and as the personal representative and

next of kin of Floyd Michael Woody, by and through counsel, and for her Complaint against

Defendants, avers as follows:

### NATURE OF ACTION

1. This action arises out of the wrongful death of Plaintiff's husband, Floyd Michael

Woody, who died by police shooting on January 25, 2022. Plaintiff brings this action under 42

U.S.C. § 1983 to recover money damages and for equitable relief to redress Defendants' violations of Floyd Michael Woody's rights under the Fourth and Fourteenth Amendments to the United States Constitution.

## JURISDICTION AND VENUE

2. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3). This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367(a).

3. Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this district.

## PARTIES

4. Plaintiff Talitha Gail Woody is the widow, personal representative, and next of kin of the descendant, Floyd Michael Woody.

5. Plaintiff is the proper person to bring this wrongful death action under Tenn. Code Ann. § 20-5-106(a) and federal law.

6. Defendant Chris Allen Buckner is an officer with the White Pines Police Department and is a member of the multi-jurisdictional SWAT team. At all relevant times, Defendant Buckner was acting under color of law. He is sued in his personal capacity.

7. Defendant Robert Harrison Jacobs is a deputy with the Jefferson County Sheriff's Department and a member of the Jefferson County SORT team. At all relevant times, Defendant Jacobs was acting under color of law. He is sued in his personal capacity.

8. Defendant Joshua Rigsby is a deputy with the Jefferson County Sheriff's Department. At all relevant times, Defendant Rigsby was acting under color of law. He is sued in his personal capacity.

9. Defendant Chad Dunlap is a deputy with the Jefferson County Sheriff's Department. At

all relevant times, Defendant Dunlap was acting under color of law. He is sued in his personal capacity.

10. Defendant Justin Crowder is a deputy with the Jefferson County Sheriff's Department. At all relevant times, Defendant Crowder was acting under color of law. He is sued in his personal capacity.

11. Defendant Mark Snowden is a supervisor with the Jefferson County Sheriff's Department. At all relevant times, Defendant Snowden was acting under color of law. He is sued in his personal capacity.

12. Defendant Alejandro Torres is a deputy with the Jefferson County Sheriff's Department and is a member of the Jefferson County SORT team. At all relevant times, Defendant Torres was acting under color of law. He is sued in his personal capacity.

13. Defendant Jeremy Lemonde is a deputy with the Jefferson County Sheriff's Department and is a member of the Jefferson County SORT team. At all relevant times, Defendant Lemonde was acting under color of law. He is sued in his personal capacity.

14. Defendant John David is a deputy with the Jefferson County Sheriff's Department and a member of the Jefferson County SORT team. At all relevant times, Defendant David was acting under color of law. He is sued in his personal capacity.

15. Defendant Christopher Edmonds is a deputy with the Jefferson County Sheriff's Department and is a member of the Jefferson County SORT team. At all relevant times, Defendant Edmonds was acting under color of law. He is sued in his personal capacity.

16. Defendant Eric Ramsey is a deputy with the Jefferson County Sheriff's Department. At all relevant times, Defendant Ramsey was acting under color of law. He is sued in his personal capacity.

17. Defendant Randy Hubbard is a deputy with the Jefferson County Sheriff's Department. At all relevant times, Defendant Hubbard was acting under color of law. He is sued in his personal capacity.

18. Defendant John Holland is a deputy with the Jefferson County Sheriff's Department, as well as a member of the Jefferson County SORT team. At all relevant times, Defendant Holland was acting under color of law. He is sued in his personal capacity.

19. Defendant Jeremy Nash is a deputy with the Jefferson County Sheriff's Department and is the leader of the Jefferson County SORT team. At all relevant times, Defendant Nash was acting under color of law. He is sued in his personal capacity.

20. Defendant Jeff Coffey is the sheriff of Jefferson County, Tennessee. At all relevant times, Defendant Coffey was acting under color of law and with final authority over all police activities of Defendant Jefferson County. He is sued in sued in his official and personal capacities.

21. Defendant White Pines, Tennessee is a municipality organized under the laws of the State of Tennessee. Defendant White Pines is a "person" under 42 U.S.C. § 1983.

22. Defendant Jefferson County, Tennessee is a unit of local government organized under the laws of the State of Tennessee. Defendant Jefferson County, Tennessee is a "person" under 42 U.S.C. § 1983.

Facts

23. On or about January 25, 2022, Plaintiff Gail Woody called the Jefferson County, Tennessee Sheriff's Department to request an escort for a wellness check on her husband, Floyd Michael Woody. Mr. Woody had called Mrs. Woody upset that his cancer had returned and was terminal. He said that he was feeling sick and "bleeding all over the place". He thought he was

going to die.

24. Plaintiff Woody told the officers that she and Mr. Woody had a disagreement two days before the incident, and she decided to leave the residence. She wanted someone to accompany her into the home, because she did not want to find her husband's dead body inside.

25. Defendant Rigsby and Defendant Dunlap responded to the call, and met Plaintiff Gail Woody at location away from the property. They all then proceeded to the Woody residence to perform the welfare check.

26. Defendants Rigsby Defendant Dunlap knocked on the door, and rang the doorbell, but Mr. Woody did not answer.

27. Defendant Rigsby asked if there were weapons in the home, and she replied, "yes". When asked if Mr. Woody had ever threatened to harm himself with the weapon, she relied "no".

28. At approximately 1:55 p.m., Defendant Dunlap, through glass, saw Mr. Woody walk past the front door.

29. Defendant Rigsby contacted dispatch and ask that they try and reach Mr. Woody.

30. After several attempts, dispatch was successful.

31. According to dispatch, Mr. Woody advised that they "were not welcome on his property"; "not to come to the from door "; and if "they didn't leave someone was going to get hurt".

32. He also told them he was ex-law enforcement.

33. When asked if he was OK?, Mr. Woody stated that he was fine.

34. He asked that law enforcement leave his property.

35. Mr. Woody informed dispatch that he was dying from cancer, and he wanted to be left alone.

36. He told of his respect for law enforcement, and considered them to heroes.

37. He stated that he was not in danger, and repeatedly ask that they leave.

38. Mr. Woody stated that he was going to harm anyone. He just wanted them to leave.

39. From the initial contact, and throughout the entire ordeal, Mr. Woody continuously maintained that he was not suicidal.

40. Mr. Woody stated several times that he was OK, he was not suicidal, and that he had a terminal illness.

41. Defendant Rigsby and Defendant Dunlap informed Defendant Sheriff Coffey of the situation.

42. Defendant Coffey determined that Mr. Woody was "too big of a threat", and has to "be handled".

43. Defendant Coffey dispatched the Special Operations Response Team and the multi-jurisdictional SWAT team which consists of the Jefferson County Sheriff's Department, the White Pines Police Department and the Blount County Sheriff's Department Hostage Negotiation Team.

44. Defendant Rigsby and Defendant Dunlap returned to "command post", which had been set up while they were at the house.

45. The home had been surrounded with several different law enforcement organizations.

46. Snipers, including but not limited, Defendant Buckner and Defendant Jacobs were positioned along the tree line of the property.

47. Defendant Buckner and Defendant Jacobs , who were snipers for the SWAT unit, were armed with multiple weapons including long guns, and a 9mm pistol.

48. Other officers, including but not limited to Defendant Torres and, also surround the

home.

49. Defendant Jacobs and Defendant Torres were not communicated any information about the on-going communication between Mr. Woody and Mandy Eggers of the Blount County Sheriff's Department.

50. Defendant Snowden asked Defendant Rigsby and Defendant Crowther to go meet Mr. Woody at the top of the driveway.

51. Negotiator Eggers and Defendant Coffey approached Mr. Woody's home.

52. He yelled for them to get off his property.

53. Mr. Woody starts to engage in a conversation with Eggers.

54. Mr. Woody agrees to meet with Eggers.

55. Eggers requests that he remain on the phone as he exits.

56. Mr. Woody agrees to remain on the phone with Eggers as he exits the house.

57. Eggers asks Mr. Woody if another officer could come meet him if she remained on the line.

58. Mr. Woody resisted, but stated that another officer could accompany her.

59. Mr. Woody told Eggers, that he didn't "want anything to happen".

60. Eggers assured him that "nothing would happen to him", to which Mr. Woody relied, "I just don't want to die by a damn bullet".

61. Mr. Woody asks if he was going to be arrested.

62. Eggers replied that he had "done nothing wrong".

63. After speaking with Blount County Sheriff's Office Negotiator, Many Edgar, Mr. Woody agreed to exit the home.

64. Mr. Woody states that he is coming outside with no weapon.

65. While still communicating with Mr. Woody exited the home with his phone in his hand, and sat on the porch.

66. He saw Defendant Rigsby and Defendant Crowder had come to meet him instead of Eggers.

67. He then returned to the home.

68. Mr. Woody stated that he would not go any further because he knew that "law enforcement has guns".

69. Jeremy Nash the SORT leader, gave the order to "pull back".

70. Mr. Woody exited his residence, entered his vehicle and drove to the top of his driveway to his mailbox.

71. Defendant Torres communicated Mr. Woody's movements to Defendant Nash.

72. Mr. Woody exited his vehicle and stumbled forward.

73. Mr. Woody was not armed.

74. Defendant Torres got into a physical altercation with Mr. Woody.

75. According to an eyewitness, as Mr. Woody exited the truck, Defendant Torres approached Mr. Woody "very quickly" and engaged in "hand to hand".

76. Defendant Torres yell "gun".

77. Other officers also approached Mr. Woody.

78. Defendant Torres ran towards the back of the truck, bumped into Defendant Jacobs, and fell over him

79. Defendant Jacobs did not know if Mr. Woody had discharged a weapon, but he opened fire on Mr. Woody.

80. Defendant Torres had not been shot. He fell over Defendant Jacobs.

81. Defendant Edmonds stated that he saw Defendant Buckner running towards the truck, then he heard gunshots.

82. Defendant Buckner also ran towards Mr. Woody.

83. Defendant Jacobs (JCSD) and Defendant Buckner (WPPD) fired their weapons, hitting and killing Mr. Woody.

84. Mr. Woody was shot a total of six times, with wounds to his chest, abdomen, arm and back.

85. Mr. Woody fell on his back. His eyes were open.

86. Defendant Torres then ran towards Mr. Woody, rolled him over and cuffed him.

87. Mr. Woody lay face down in handcuffs, and was not uncuffed until EMS arrived.

88. Mr. Woody was taken by ambulance to Jefferson Memorial Hospital where he was pronounced dead. One of the bullets fired at Mr. Woody nicked his jugular vein.

## Count I - § 1983
### Individual Liability of Defendant Buckner

89. Plaintiff incorporates by reference the allegations contained in Paragraphs 88 as if set forth fully herein.

90. At all times material hereto, Defendant Buckner was acting under color of law.

91. On January 25, 2022, Mr. Woody was on his property where he had a right to be.

92. At the time Mr. Woody entered his vehicle to go to his mailbox, it had been determined that Mr. Moody was no longer a threat.

93. At time Mr. Woody was killed, Blount County Negotiation Team had left the area.

94. At time Mr. Woody was killed, there had been an order for the SWAT team to "pull back".

95. At time he was killed, Mr. Woody had committed no crime.

96. When Mr. Woody exited his vehicle, Defendants Torres and Buckner saw that Mr. Woody was unarmed.

97. Defendant Torres stormed Mr. Woody, and cause a commotion.

98. In the commotion, Defendant Buckner fired his weapon, killing Mr. Woody.

99. As a direct and proximate result of Defendants' violations of his constitutional rights, Mr. Woody died unnecessarily.

100. Plaintiff is entitled to an award of all damages sustained by Mr. Woody, including the all medical and funeral expenses incurred.

101. Plaintiff is further entitled to attorneys' fees, costs, and expenses of this action under 42 U.S.C. § 1988.

## Count II - § 1983
### Individual Liability of Defendant Jacobs

102. Plaintiff incorporates by reference the allegations contained in Paragraphs 101 as if set forth fully herein.

103. At all times material hereto, Defendant Jacobs was acting under color of law.

104. On January 25, 2022, Defendant Jacobs shot Mr. Woody several times, even though Mr. Woody was on his own property and was unarmed as he exited his vehicle.

105. As a direct and proximate result of Defendants' violations of his constitutional rights, Mr. Woody suffered, and eventually died, unnecessarily.

106. Plaintiff is entitled to an award of all damages sustained by Mr. Woody, including those for pain and suffering.

107. Plaintiff is further entitled to attorneys' fees, costs, and expenses of this action under 42 U.S.C. § 1988.

## Count III - § 1983
## Individual Liability of Defendant Torres

108. Plaintiff incorporates by reference the allegations contained in Paragraphs 107 as if set forth fully herein.

109. At all times material hereto, Defendant Jacobs was acting under color of law.

110. On January 25, 2022, Detective Torres accosted and Mr. Woody causing Mr. Woody to be in fear.

111. Detective Torres also physically assaulted Mr. Woody when grabbed Mr. Woody after Mr. Woody exited his vehicle.

112. Defendant Torres the yelled that Mr. Woody had a gun, which caused Mr. Woody to shot and killed.

113. As a direct and proximate result of Defendants' violations of his constitutional rights, Mr. Woody died unnecessarily.

114. Plaintiff is entitled to an award of all damages sustained by Mr. Woody, including the all medical and funeral expenses incurred.

115. Plaintiff is further entitled to attorneys' fees, costs, and expenses of this action under 42 U.S.C. § 1988.

## Count IV - § 1983
## Civil Rights Conspiracy against All Defendants

116. Plaintiff incorporates by reference the allegations contained in Paragraphs 115 as if set forth fully herein.

117. By participating in, and/or failing to stop the killing, assault, and other unlawful acts against Plaintiff, Defendants formed an unlawful conspiracy to deprive Mr. Woody of rights and privileges secured by the constitutions of the United States and Tennessee and further

conspired to commit the torts herein averred.

118. As a direct and proximate result of Defendants' civil conspiracy, Mr. Woody lost his life.

119. Plaintiff is entitled to an award of all damages sustained by Mr. Woody, including the all medical and funeral expenses incurred.

120. Plaintiff is further entitled to attorneys' fees, costs, and expenses of this action under 42 U.S.C. § 1988.

## Count V - § 1983
## Municipal Liability of White Pines, Tennessee

121. Plaintiff incorporates by reference the allegations contained in Paragraphs 1-120 as if set forth fully herein.

122. At all times material hereto, Defendant White Pines, Tennessee maintained a policy or custom of failing to adequately train and supervise its police officers in interacting with individuals such as Mr. Woody.

123. Defendant Buckner, a police officer with the White Pines Police Department, and a member of the multi-jurisdictional SWAT team failed to communicate with command base as to the progress with Mr. Woody.

124. The failure of Defendant White Pines was the moving force behind Mr. Woody's constitutional injuries, thereby violating his Fourteenth Amendment right to due process of law.

125. As a direct and proximate result of Defendant's violations of his constitutional rights, Mr. Woody died suffered needlessly and died unnecessarily.

126. Plaintiff is entitled to an award of all damages sustained by Mr. Woody, including the mental and physical suffering Woody endured before his death on January 25, 2022; the pecuniary value of the life of Mr. Woody; and all medical and funeral expenses incurred.

127. Plaintiff is further entitled to attorneys' fees, costs, and expenses of this action under 42 U.S.C. § 1988.

## Count VI – § 1983
## Municipal Liability of Jefferson County, Tennessee

128. Plaintiff incorporates by reference the allegations contained in Paragraphs 1 – 127 as if set forth fully herein.

129. At all times herein material, Defendants Rigsby; Dunlap; Crowder; Snowden; Torres; Lemonde; David; Edmonds; Ramsey; Humbard; Holland; and Nash were deputies with the Jefferson County Sheriff's Department, and were acting under color of law.

130. At all times herein material, Defendant Jeff Coffey was the Sheriff of Jefferson County.

131. Defendant Coffey was the highest-ranking individual involved in Mr. Woody's situation.

132. Defendant Coffey made the decision to activate the SWAT team, and was the highest-ranking officer on the scene.

133. In addition, Defendant Jefferson County is liable for the injuries caused by their officers pursuant to T.C.A. § 8-8-301, *et. seq.*

## Count VI
## Loss of Consortium

134. Plaintiff incorporates by reference the allegations contained in Paragraphs 1-133 as if set forth fully herein.

135. As a direct result of the Defendants actions described herein, Plaintiff Telitha Gail Woody lost the love and services of her husband.

136. Pursuant to T.C.A. § 25-1-106, Plaintiff is entitled to recover for her loss.

## Prayer for Relief

WHEREFORE, Plaintiff respectfully prays for relief as follows:

1. That Defendants be made to answer this Complaint within the time allotted by the Federal Rules of Civil Procedure.

2. An award of all compensatory damages in the amount to be determined by the Jury.

3. An award of all prejudgment and post-judgment interest;

4. An award of reasonable attorney's fees and costs.

5. Such other legal and equitable relief to which Plaintiff may be entitled; and

6. Plaintiff further demands a Jury to try this cause.

Respectfully submitted,

/s/Ursula Bailey
Ursula Bailey (TN Bar # 020616)
LAW OFFICES OF URSULA BAILEY
422 S. Gay Street, Suite 301
Knoxville, TN 37902
Phone: (865) 522-9942
Fax: (865) 522-9945
E-mail: ubailey65@gmail.com

Dan C. Stanley (TN Bar No. 021002)
Richard E. Collins (TN Bar No. 024368)
STANLEY, KURTZ & COLLINS, PLLC
422 S. Gay Street, Suite 301
Knoxville, TN 37902
Phone: (865) 522-9942
Fax: (865) 522-9945
E-mail: dan@knoxvilleattorney.com
E-mail: richard@knoxvilleattorney.com

**Counsel for Plaintiff**